# UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

KRISTIN JARAMILLO,

        Plaintiff - Appellant,

    v.

COLORADO JUDICIAL
DEPARTMENT,

        Defendant - Appellee.

No. 04-1284

## ORDER
Filed December 20, 2005

Before **BRISCOE**, **ANDERSON**, and **O'BRIEN**, Circuit Judges.

The panel grants rehearing in part for the sole purpose of modifying a sentence in the previously filed opinion. The replacement language appears on page 13, first full sentence, and reads as follows: "While Ms. Donovan's initial explanation was factually incorrect, on this record that isolated statement simply is not outrageous enough to undermine the CJD's legitimate explanation for its decision." Appellant's petition for rehearing is denied in all other respects.

The petition for rehearing en banc was transmitted to all of the judges of the court who are in regular active service. As no member of the panel and no

judge in regular active service on the court requested that the court be polled, that petition is also denied.

Attached is copy of the modified opinion.

Entered for the Court
Clerk of Court

By:
Deputy Clerk

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

KRISTIN JARAMILLO,

        Plaintiff - Appellant,

    v.

COLORADO JUDICIAL
DEPARTMENT,

        Defendant - Appellee.

No. 04-1284

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. NO. 02-F-699 (CBS))**

Submitted on the briefs:[*]

John R. Olsen, Olsen & Brown, L.L.C., Niwot, Colorado, for Plaintiff-Appellant.

Ken Salazar, Attorney General, Douglas J. Cox, Assistant Attorney General, Denver, Colorado, for Defendant-Appellee.

Before **BRISCOE**, **ANDERSON**, and **O'BRIEN**, Circuit Judges.

**PER CURIAM.**

---

[*]After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument.  See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

This Title VII appeal arises out of Plaintiff Kristin Jaramillo's claim that the Colorado Judicial Department ("CJD") subjected her to disparate treatment on the basis of sex when it passed her over for promotion in favor of a male officer. The district court granted the CJD's motion for summary judgment. We exercise discretion under 28 U.S.C. § 1291 and AFFIRM.

## I.

Ms. Jaramillo began working as a volunteer in the Denver Juvenile Probation Department ("DJPD") in 1994. Appellant's App. at 288. Over the next several years she continued working at DJPD in a part-time, unpaid capacity. Id. at 288-89. Ms. Jaramillo was hired as a full-time contract employee by DJPD in February 1998. Id. at 289. In February 1999, DJPD hired Ms. Jaramillo as a Probation Officer Level I, a permanent position. Id.

In October 2000, DJPD announced the opening of a Probation Officer II ("PO II") position. Id. at 70. DJPD developed a testing procedure that involved a review of the applicant's training, career track accomplishments, probation client case management, and a position paper submitted with the application. Id. at 65-68, 72-73. Seven individuals applied. The applicants received a letter from Susan Donovan, the Chief Probation Officer for DJPD at all times relevant to this

suit, outlining the selection process and the areas of evaluation. Id. at 72, 74-75. Four of the seven applicants withdrew. The remaining three applicants were Ms. Jaramillo, Brian Sandoval, and Arturo Villa, all of whom were DJPD employees. Id. at 74. After testing was complete, DJPD ranked the candidates in the following order, with corresponding scores: (1) Kristin Jaramillo, 36.8; (2) Brian Sandoval, 36.0; (3) Arturo Villa, 26.6. Id. at 82-87. In February 2001, Susan Donovan announced that Brian Sandoval had been selected for promotion to PO II. Id. at 88. Ms. Jaramillo was promoted to PO II in October 2001. Id. at 90.

Ms. Jaramillo filed her complaint in April 2002, alleging that the CJD subjected her to disparate treatment on the basis of sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. In July 2004, the district court granted the CJD's motion for summary judgment.

## II.

To prevail on a disparate treatment claim under Title VII, a plaintiff must show that his employer intentionally discriminated against him for a reason prohibited by the statute. See Salguero v. City of Clovis, 366 F.3d 1168, 1178 (10th Cir. 2004) ("[Title VII] prohibits only intentional discrimination *based upon* an employee's protected class characteristics.") (quoting EEOC v. Flasher Co.,

986 F.2d 1312, 1319 (10th Cir. 1992)).  If the plaintiff relies upon circumstantial evidence, we apply the burden-shifting framework outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  First, the plaintiff must establish a prima facie case of discrimination by showing that "(1) he is a member of a protected class; (2) he applied for and was qualified for the particular position; (3) he was not promoted despite his qualifications; and (4) the position was filled or remained open after he was rejected." Cross v. The Home Depot, 390 F.3d 1283, 1286 (10th Cir. 2004); see also Jones v. Barnhart, 349 F.3d 1260, 1266 (10th Cir. 2003).[1]  If the plaintiff establishes a prima facie case, a presumption of discrimination arises.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000).  The burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action.  Tex. Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981).  If the defendant carries its burden of production, the presumption of discrimination drops out of the case.  St. Mary's Honor Center v. Hicks, 509 U.S. 502, 510-11 (1993).  The

---

[1]We note that our cases have sometimes articulated the prima facie case differently, particularly as to the fourth prong and whether it requires the plaintiff to show that the person promoted was outside of the protected class to which the plaintiff belongs.  Because we do not resolve this case on the basis of the adequacy of Ms. Jaramillo's prima facie case—both parties agree, infra, she has satisfied her burden on that point—we do not address any inconsistency in our jurisprudence.  See generally, Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220 (10th Cir. 2000); Perry v. Woodward, 199 F.3d 1126 (10th Cir. 1999).

-4-

burden then shifts back to the plaintiff, who must prove by a preponderance of the evidence that the employer's reasons are a pretext for unlawful discrimination. Rivera v. City & County of Denver, 365 F.3d 912, 920 (10th Cir. 2004).

The district court found that the CJD provided a legitimate, non-discriminatory reason for its decision to promote Mr. Sandoval, namely his superior qualifications (discussed below). It found that Ms. Jaramillo failed to produce evidence of pretext, reasoning that (1) she failed to make arguments or produce evidence to show that the CJD's reason for promoting Mr. Sandoval was false, Appellant's App. at 378; (2) she failed to show any procedural irregularities because the CJD's selection process was consistent with published policy, id. at 379-80; and (3) her allegation of "pre-selection" was supported only by rumor and hearsay, and moreover, the evidence tended to corroborate the CJD's argument that it had a legitimate reason for promoting Mr. Sandoval. Id. Accordingly, the court found that the CJD produced a nondiscriminatory reason for its decision, and Ms. Jaramillo failed to raise a genuine issue of fact on the element of pretext.

We review the district court's grant of summary judgment de novo. Wilson v. Meeks, 98 F.3d 1247, 1252 (10th Cir. 1996). We consider the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences from the available underlying facts. Id. at 1253. Summary judgment is

appropriate if there is no genuine issue of material fact. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 585-87 (1986).

**III.**

The CJD concedes, for purposes of summary judgment, that Ms. Jaramillo has established a prima facie case of disparate-treatment discrimination. Our review is therefore confined to the question whether the CJD produced a legitimate, non-discriminatory reason for its employment decision and, if so, whether Ms. Jaramillo produced evidence sufficient to raise a genuine issue of material fact on the question of pretext. The CJD has carried its burden; Ms. Jaramillo has not.

**A.      Legitimate, Non-discriminatory Reason for Mr. Sandoval's Promotion**

The CJD submits that it promoted Mr. Sandoval over Ms. Jaramillo because he was better qualified. Ms. Jaramillo argues that she was far more qualified than Mr. Sandoval, that she had more experience, and that Mr. Sandoval had consistently fallen below DJPD performance standards. The evidence, including Ms. Jaramillo's own testimony, belies her allegation that she was clearly better qualified than Mr. Sandoval; therefore, the CJD has established a legitimate, non-discriminatory reason for its decision.

-6-

Mr. Sandoval's qualifications exceeded Ms. Jaramillo's in several respects. He was certified in drug and alcohol counseling, he was fluent in spoken and written Spanish, and he had experience working at the INS detention facility. Appellant's App. at 74-75. Ms. Jaramillo conceded that she lacked these qualifications, that they were relevant to the PO II position, and that Ms. Donovan could have legitimately considered them in her promotion decision. Jaramillo Dep., id. at 97-100; Appellee's Br. at 15-18 (quoting deposition testimony). Mr. Sandoval's prior experience included full-time work as a probation officer with the Denver County Probation Department. Appellant's App. at 294-95. Ms. Jaramillo's only previous experience was part-time work as an unpaid intern. Id. at 288-89. Mr. Sandoval had been with the CJD since February 1998, whereas Ms. Jaramillo began full-time employment in February 1999. Appellee's Br. at 9; Appellant's App. at 9, 74-75. Ms. Jaramillo concedes that the CJD could have believed in good faith that Mr. Sandoval was better qualified for the job and that this belief would have been a non-discriminatory reason for the promotion. Jaramillo Dep., Appellant's App. at 94. Accordingly, the CJD has produced a legitimate, non-discriminatory reason for its decision.

**B.     Evidence of Pretext**

Ms. Jaramillo argues, nonetheless, that the CJD's explanation is merely pretext for discrimination. A plaintiff demonstrates pretext by producing evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997) (quoting Olson v. General Elec. Astrospace, 101 F.3d 947, 951-52 (3d Cir. 1996)). Evidence of pretext may include "prior treatment of plaintiff; the employer's policy and practice regarding minority employment (including statistical data); disturbing procedural irregularities (e.g., falsifying or manipulating . . . criteria); and the use of subjective criteria." Garrett v. Hewlett-Packard Co., 305 F.3d 1210, 1217 (10th Cir. 2002) (quoting Simms v. Oklahoma ex rel. Dept. of Mental Health and Substance Abuse Servs., 165 F.3d 1321, 1328 (10th Cir. 1999)).

**1.     Job Qualifications**

Ms. Jaramillo claims that the promotion of Mr. Sandoval was patently unreasonable, thereby supporting the inference of discrimination, because she was far more qualified for the job. We must proceed with caution when considering

the relative merits of individual employees. The courts may not "act as a super personnel department that second guesses employers' business judgments." Simms, 165 F.3d at 1330 (quotation omitted). Accordingly, minor differences between a plaintiff's qualifications and those of a successful applicant are not sufficient to show pretext. Bullington v. United Airlines, Inc., 186 F.3d 1301, 1319 (10th Cir. 1999), *overruled on other grounds*, Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002). To show pretext, the disparity in qualifications must be "overwhelming." Id. at 1319 (citing Sanchez v. Philip Morris, 992 F.2d 244, 247-48 (10th Cir. 1993)); see also Odom v. Frank, 3 F.3d 839, 847 (5th Cir. 1993) (explaining that the difference in qualifications must be so glaring as to "jump off the page and slap us in the face"). As discussed above, the evidence shows, and Ms. Jaramillo concedes, that the CJD could have believed in good faith that Mr. Sandoval was at least as well qualified as she was. A jury therefore could not find that this explanation was pretext for unlawful discrimination.

## 2.     Inconsistent Explanations for Mr. Sandoval's Promotion

Ms. Jaramillo dismisses the CJD's non-discriminatory reasons for Mr. Sandoval's promotion as "ex post facto rationalizations." The main thrust of her argument is that Ms. Donovan initially provided a false reason for the promotion; therefore, her subsequent explanation was necessarily pretextual. When Ms.

Jaramillo first asked for an explanation of the CJD's decision, Ms. Donovan told her that Mr. Sandoval's examination score was higher than hers. In fact, she had scored a fraction of a point higher than Mr. Sandoval. After Ms. Jaramillo filed an internal complaint, Ms. Donovan explained that Mr. Sandoval was promoted because he was better qualified for the job, the same reason the CJD has advanced throughout this litigation. Appellant's App. at 156.

The fact that one of the CJD's explanations turned out to be incorrect does not necessarily create a genuine issue of fact concerning pretext. A plaintiff demonstrates pretext "by showing that the employer's proffered explanation is unworthy of credence." Reeves, 530 U.S. at 143 (quoting Tex. Dept. of Community Affairs, 450 U.S. at 256). "[O]nce the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision." Id. at 147; see Miller v. Eby Realty Group LLC, 396 F.3d 1105, 1113 (10th Cir. 2005) (affirming jury verdict of age discrimination where plaintiff "show[ed] multiple false explanations were given, and once [the employer's] explanation is rejected there is no apparent alternative legitimate justification for [the plaintiff's] termination"). In the most straightforward cases, the plaintiff's showing of pretext completely displaces the employer's legitimate, non-discriminatory explanation, leaving no explanation for

the decision. This is not such a case: even without Ms. Donovan's initial explanation, the CJD can readily demonstrate a legitimate reason for promoting Mr. Sandoval.

The CJD has consistently explained that it promoted Mr. Sandoval because he was more highly qualified than Ms. Jaramillo. Ms. Jaramillo concedes that there is a legitimate basis for the CJD's explanation. The record is therefore not silent with respect to the employer's motivation. On the contrary, the CJD's legitimate, non-discriminatory explanation is supported by the evidence.

Ms. Jaramillo has not produced evidence sufficient for a jury to find that the CJD's legitimate, non-discriminatory explanation—that Mr. Sandoval was better qualified—is also unworthy of credence. "[A]s a general rule, an employee must proffer evidence that shows each of the employer's justifications are pretextual." Tyler v. RE/MAX Mt. States, Inc., 232 F.3d 808, 814 (10th Cir. 2000); Ghosh v. Ind. Dep't of Envtl. Mgmt., 192 F.3d 1087, 1091-92 (7th Cir. 1999); Combs v. Plantation Patterns, 106 F.3d 1519, 1539 (11th Cir. 1997); see also Reeves, 530 U.S. at 148 (explaining that a prima facie case and proof of pretext are not sufficient to create a genuine issue of fact if "the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision"). Debunking one of the employer's explanations defeats the case for summary judgment "only if the company has offered no other reason that, *if that*

*reason stood alone* (more precisely if it did not have support from the tainted reason), would have caused the company to take the action of which the plaintiff is complaining." Russell v. Acme-Evans Co., 51 F.3d 64, 69 (7th Cir. 1995).

In some cases, however, a successful attack on part of the employer's legitimate, non-discriminatory explanation is enough to survive summary judgment even if one or more of the proffered reasons has not been discredited. Something less than total failure of the employer's defense is sufficient to create a genuine issue of fact when (1) the reasons are so intertwined that a showing of pretext as to one raises a genuine question whether the remaining reason is valid, see id. at 70; (2) the pretextual character of one explanation is "so fishy and suspicious," id., that a jury could "find that the employer (or its decisionmaker) lacks all credibility," Chapman v. AI Transport, 229 F.3d 1012, 1050 (11th Cir. 2000) (en banc) (Birch, J., concurring and dissenting); (3) the employer offers a plethora of reasons, and the plaintiff raises substantial doubt about a number of them, Tyler, 232 F.3d at 814; (4) the plaintiff discredits each of the employer's objective explanations, leaving only subjective reasons to justify its decision, see Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1298-99 (D.C. Cir. 1998) (en banc); or (5) the employer has changed its explanation under circumstances that suggest dishonesty or bad faith, Cole v. Ruidoso Mun. Schs., 43 F.3d 1373, 1380-81 (10th Cir. 1994). None of these exceptions apply to Ms. Jaramillo's case.

First, Ms. Donovan's erroneous statement that Mr. Sandoval had a higher test score is not so intertwined with the CJD's contention that he was better qualified that it raises a genuine question of pretext. Because the examination was one of many factors in the promotion to PO II, an applicant could be considered better qualified even if he did not have the highest test score. The CJD's legitimate explanation is therefore not dependent upon the initial rationale offered by Ms. Donovan.

Second, the showing of pretext was not so strong that it destroyed the CJD's credibility. To raise an inference of pretext in the face of the employer's legitimate, nondiscriminatory explanation, the plaintiff must undermine the employer's credibility to the point that a reasonable jury could not find in its favor. See Russell, 51 F.3d at 70. This exception is based on the common-sense notion that "if a person is shown to be a liar in an outrageous manner . . ., the inference that the person is *non-credible*, and should not be believed as to other issues, is a reasonable one." Chapman, 229 F.3d at 1050 (Birch, J., concurring and dissenting). While Ms. Donovan's initial explanation was factually incorrect, on this record that isolated statement simply is not outrageous enough to undermine the CJD's legitimate explanation for its decision.

Third, Ms. Jaramillo has not shown that the CJD offered a significant number of pretextual reasons. An employer who pursues a shotgun approach under McDonnell-Douglas runs a risk of destroying its own credibility because "the factfinder's rejection of some of the defendant's proffered reasons may impede the employer's credibility seriously enough so that a factfinder may rationally disbelieve the remaining proffered reasons." Fuentes v. Perskie, 32 F.3d 759, 764 n.7 (3d Cir. 1994); see also Smith v. Chrysler Corp., 155 F.3d 799, 809 (6th Cir. 1998). The CJD has not thrown out "a bagful of legitimate reasons." Fuentes, 32 F.3d at 764 n.7. With the exception of a single comment by Ms. Donovan, it has offered the same explanation from the beginning.

Nor has Ms. Jaramillo eliminated all objective explanations of the CJD's decision. In Aka, the employer proffered two reasons for its decision not to hire the plaintiff as a pharmacy technician: (1) the successful candidate was better qualified, and (2) the successful candidate was more enthusiastic about the position. The court determined, however, that a jury could find that the plaintiff was "markedly better qualified" for the position, Aka, 156 F.3d at 1298, leaving the employer with its subjective assessment of the applicants' enthusiasm. Because this determination involved an assessment of credibility, the court found that the plaintiff raised a genuine question of fact regarding pretext. Id. at 1299. By contrast, the CJD's explanation is supported by the evidence, which is

-14-

sufficient to support a good faith belief that Mr. Sandoval was better qualified than Ms. Jaramillo.

Finally, the mere fact that the CJD has offered different explanations for its decision does not create a genuine question of pretext. Courts have looked to two factors to evaluate a change in the employer's explanation for an employment decision: (1) the timing of the change in position and (2) the evidentiary basis for the new rationale. See Perfetti v. First Nat'l Bank, 950 F.2d 449, 456 (7th Cir. 1991) ("If at the time of the adverse employment decision the decision-maker gave one reason, but at the time of the trial gave a different reason which was unsupported by the documentary evidence, the jury could reasonably conclude that the new reason was a pretextual after-the-fact justification."). The timing of the change has been found to support the inference of pretext when it occurs after significant legal proceedings have occurred. In Zachagnini v Chas. Levy Circulating Co., 338 F.3d 672 (7th Cir. 2003), the employer argued that it only hired individuals recommended by the union, and the union did not recommend the plaintiff. Id. at 676. However, during discovery, and in its initial briefing to the district court, the employer argued that it had a policy against rehiring workers who had been laid off. It did not advance the second explanation until its reply brief on summary judgment. Id. at 676-78. The court found that the employer's change of position late in the proceedings was "fishy" and might

-15-

allow a jury to find pretext. See id. at 678. Similarly, in Cole, the school district stated that it terminated the plaintiff, a school principal, because of budgetary constraints. After she filed an EEOC complaint, however, the district relied on the plaintiff's alleged inability to maintain a cohesive faculty. Cole, 43 F.3d at 1381.

A change in position also supports a finding of pretext when the new rationale is unsupported by the evidence. In Zachagnini, the plaintiff introduced evidence that undermined both of the employer's rationales. See Zachagnini, 338 F.3d at 678-79. Likewise, in Cole, the record revealed "glaring contradictions" in the school district's alternative rationale. Cole, 43 F.3d at 1380. The district claimed that faculty conflict began immediately after the plaintiff started as principal; however, the record included "glowing evaluations" indicating that she maintained positive faculty relations, as well as affidavits from teachers stating that Ms. Cole's predecessor faced similar problems with the faculty. Id. at 1380, 1381 n.6.

While the timing of the change in the CJD's explanation could raise some suspicion, the record supports its contention that Mr. Sandoval was better qualified for the position. Ms. Jaramillo alleges that the CJD did not rely on Mr. Sandoval's qualifications until after she filed a grievance. This is somewhat similar to Cole, where the employer raised a different explanation after the

-16-

plaintiff filed an EEOC complaint. Even assuming an internal grievance to be as significant as a formal EEOC complaint, however, the CJD's rationale is supported by the record. The CJD's early change of position does not raise a genuine question whether its reliance on Mr. Sandoval's documented qualifications was an attempt to mask an illegitimate motive.

### 3. Pretext-Plus

Ms. Jaramillo argues that the district court relied on the discredited doctrine of pretext-plus. Under pretext-plus, the plaintiff must do more than show pretext; he must also "come forward with additional, direct evidence of a discriminatory motive." Neal v. Roche, 349 F.3d 1246, 1249 (10th Cir. 2003). In other words, a complete lack of evidence regarding the employer's motive is not enough to raise a genuine issue of fact. We rejected the pretext-plus doctrine in Randle v. City of Aurora, 69 F.3d 441 (10th Cir. 1995), holding that "discriminatory animus may be inferred from the simple showing of pretext"; therefore, a plaintiff who establishes a prima facie case and pretext is entitled to a jury. Id. at 451.

Ms. Jaramillo's argument rests on a misunderstanding of pretext-plus. She maintains that because she has discredited the CJD's initial explanation, she has established pretext and is not required to present further evidence. The demise of

pretext-plus means that the plaintiff creates a genuine issue of fact merely by discrediting the employer's legitimate, nondiscriminatory reason; however, the burden remains on the plaintiff to show that each reason given by the employer is unworthy of credence. Pretext-plus becomes relevant only after the employee has discredited the employer's reasons, leaving nothing in the record to explain the employment decision. We explained in Randle that summary judgment would be appropriate "if [the] plaintiff could not offer evidence tending to show the defendant's innocent explanation for his employment decision was false." Id. at 451 n.14. The CJD has offered a legitimate, nondiscriminatory reason for its decision—Mr. Sandoval was better qualified for the position. Because she has not presented evidence to show that this reason is mere pretext, Ms. Jaramillo's successful attack on Ms. Donovan's initial explanation is not enough to create a genuine issue of fact.

### 4. Procedural Irregularities

Ms. Jaramillo alleges that the selection process was marred by numerous procedural irregularities. She argues that the CJD failed to perform mandatory testing, that it pre-selected Mr. Sandoval for the position, that it failed to provide

a hearing on her internal grievance, that Ms. Donovan attempted to give her a pay raise after she filed a grievance, and that the CJD conducted a biased investigation of her complaint. None of the actions identified by Ms. Jaramillo constitute procedural irregularities.

### a. Failure to Perform Mandatory Testing

Because the Judicial System Personnel Rules did not require the Department to administer a formal examination, its failure to do so is not a procedural irregularity. Colorado state agencies follow the so-called "rule of three," which provides the appointing authority with complete discretion to select any one of the top three applicants for a position. See Conde v. Colo. State Dept. of Personnel, 872 P.2d 1381, 1388 (Colo. App. 1994) ("A necessary ingredient of the rule of three is the appointing authority's right to select any of the highest three applicants.") (quotations omitted). The Colorado Judicial System Personnel Rules accordingly give the Chief Probation Officer full discretion to select any of the top three candidates for a position. Colorado Judicial System Personnel Rule 18.B.1, Appellant's App. at 78, 80-84. Because the applicant pool had been reduced to three, the Chief Probation Officer had full discretion to choose from among the remaining candidates. The CJD was not required to conduct interviews or testing. Benway Dep., Appellant's App. at 80-81, 277. For the same reasons,

-19-

Ms. Jaramillo's allegation that the CJD evaluated the candidates using subjective criteria, even if true, is not evidence of procedural irregularity.

### b. Pre-selection of Mr. Sandoval

Ms. Jaramillo alleges that the CJD pre-selected Mr. Sandoval for the PO II position in order to keep him at DJPD. Appellant's Br. at 21. Ms. Jaramillo does not provide evidence sufficient to create a genuine issue of fact on the question of pre-selection. Even assuming the truth of her allegation, it tends to prove only that the CJD promoted Mr. Sandoval for a reason other than his gender. It is therefore insufficient to show pretext.

There is evidence that Ms. Donovan discussed the promotion with Mr. Sandoval, but it suggests only that she encouraged Mr. Sandoval to apply for the position when it became available. Mr. Sandoval testified that after he was offered a PO II position in Denver Adult Probation, he called Ms. Donovan to verify a rumor that a similar position would be open in Denver Juvenile Probation. According to Mr. Sandoval, Ms. Donovan told him that a PO II position would be available at some point, though she did not set a date, and she told him that "you got to like your chances, as good as anybody else's, that appl[ies] for the position." Sandoval Dep., Appellant's App. at 175. Ms. Donovan also testified that Mr. Sandoval called her to discuss his job offer in

Denver Adult Probation and the possibility of an opening at the PO II level in Denver Juvenile Probation. According to Ms. Donovan, she told him that she "knew it was a difficult decision to make, that he had to go through the process like everyone else." Donovan Dep., id. at 200. She testified that she offered Mr. Sandoval "words of encouragement" during the phone conversation, telling him that he would have "as good a chance" as anyone for a PO II position in Denver Juvenile Probation. Id. Neither Mr. Sandoval or Ms. Donovan suggested that she promised him that he would be promoted when the PO II position became available.

Ms. Jaramillo has not produced competent evidence to support her allegation of pre-selection. Ms. Jaramillo testified that several of her co-workers told her that Mr. Sandoval told them that he had been promised a promotion. Appellant's App. at 141. Arturo Villa testified that Mr. Sandoval told him that Susan Donovan told him in a telephone call "not to take [a position in adult probation] because the next PO position that became available for Denver Juvenile would be his." Villa Dep., id. at 169-70. Beverly Hobbs Porter, a manager in the department, heard through "the rumor mill" that Sandoval had been promised the promotion. Appellant's Br. at 9; Porter Dep., Appellant's App. at 185. None of these individuals claimed to have gotten their information from management-level employees. Appellant's App. at 142. Ms. Jaramillo did not

-21-

discuss the issue with her supervisors or anyone in management, nor did she ask Mr. Sandoval whether he had been promised the promotion. Id. at 141. Hearsay testimony that would not be admissible at trial is not sufficient to defeat a motion for summary judgment. See Thomas v. IBM, 48 F.3d 478, 485 (10th Cir. 1995).

Ms. Jaramillo argues that Mr. Sandoval's statements are non-hearsay admissions of a party opponent because they were "statement[s] by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." Fed. R. Evid. 801(d)(2)(D). In order for a statement to qualify as an admission of a party opponent, the speaker "must be involved in the decisionmaking process affecting the employment action involved." Aliotta v. Nat'l R.R. Passenger Corp., 315 F.3d 756, 762 (7th Cir. 2003). Mr. Sandoval was not involved in the hiring or promotion process. His alleged statements were therefore outside the scope of his employment and not admissible as statements of a party opponent.

Furthermore, Ms. Jaramillo's pre-selection argument proves too much. If Ms. Donovan did in fact resolve to promote Mr. Sandoval in order to prevent him from leaving the department, this only shows that the application process was a meaningless exercise. This might be inconsiderate or unfair, but it does not support the inference that the CJD's employment decision was motivated by sex-based discrimination. See Mackey v. Shalala, 360 F.3d 463, 468-69 (4th Cir.

-22-

2004) (holding that the plaintiff's allegation of preselection, even if true, did not entitle a jury to conclude that its proffered explanation—that the candidate was better qualified—was a pretext for unlawful discrimination); Bullington, 186 F.3d at 1318 n.14 (explaining that the court's role is not to decide whether employment decisions are wise or fair, but whether "those decisions were motivated by discriminatory animus"). Ms. Jaramillo's pre-selection argument rests on the premise that the CJD promoted Mr. Sandoval for a reason not prohibited by Title VII. Assuming that this premise is true, a reasonable jury could not find that the CJD's decision was based on gender discrimination. See Marx v. Schnuck Mkts., Inc., 76 F.3d 324, 328 (10th Cir. 1996) ("[I]f a civil rights plaintiff concedes that the real reason for the employer's action was a motive not prohibited under the civil rights laws, such a concession mandates granting of summary judgment to the employer.") (citing Randle, 69 F.3d at 451 n.14). Her allegation of pre-selection is therefore insufficient to create a genuine issue of fact on pretext.

### c. Other Procedural Irregularities

Ms. Jaramillo identifies three additional procedural irregularities: (1) the grievance board's failure to grant a hearing on her internal complaint; (2) Ms. Donovan's efforts to give her a pay raise; and (3) the biased investigation of her discrimination complaint. Appellee's Br. at 42-43. Regarding the failure to

provide a grievance hearing, Judicial System Personnel Rule 33.C.4 exempts from the grievance process "[i]ssues relating to transfers as defined in these rules and the promotional process and qualifications including, but not limited to, the existence, content, administration and method of scoring of examinations." Colo. Judicial Personnel Rule 33.C.4., Appellant's App. at 325. Because the board's refusal to grant Ms. Jaramillo a hearing on her complaint was consistent with the personnel rules, it does not qualify as a procedural irregularity. Furthermore, all three of these alleged irregularities occurred after Mr. Sandoval was promoted. They are therefore irrelevant to the question whether Ms. Donovan's decision to promote Mr. Sandoval was motivated by discriminatory animus.

## IV.

The CJD produced a legitimate, non-discriminatory reason for its employment decision. Because Ms. Jaramillo did not raise a genuine issue of fact on the question of pretext, the district court properly granted summary judgment. The district court's order is AFFIRMED.