**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**December 21, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

_____

DENISE MICHELLE HARPER,

    Plaintiff - Appellant,

v.

ARROW ELECTRONICS,

    Defendant - Appellee.

No. 21-1011
(D.C. No. 1:19-CV-02791-MEH)
(D. Colo.)

_____

### ORDER AND JUDGMENT[*]
_____

Before **HOLMES**, **PHILLIPS**, and **EID**, Circuit Judges.
_____

Denise Michelle Harper, pro se, appeals the magistrate judge's order granting

Arrow Electronics's (Arrow) motion for summary judgment on her claims for

discrimination, harassment, and retaliation in violation of Title VII of the Civil

Rights Act of 1964 (Title VII) and the Age Discrimination in Employment Act of

1967 (ADEA).  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.[1]

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] The parties consented to the jurisdiction of the magistrate judge.

## I.  BACKGROUND

The magistrate judge found the following undisputed material facts on summary judgment.  Ms. Harper, a 49-year-old African American, was hired by Arrow in January 2016 as an accounting coordinator/analyst in its Supplier Accounting Department.  Her official job title is Supplier Accounting Associate. Ms. Harper, who is currently on long-term disability, is still employed by Arrow in the same job.

During the relevant time, Ms. Harper's immediate supervisor was Supplier Accounting Associate Manager, Kim Griffin, a 47-year-old Caucasian.  Ms. Griffin's immediate supervisor was Supplier Accounting/Finance Manager, Diann Decker, a 54-year-old Caucasian.  Casey Gustafson, a 28-year-old Caucasian male who also reported to Ms. Griffin, was Ms. Harper's colleague.

The following events related to Ms. Harper's employment took place in 2016. From August 24 through November 15, Ms. Harper was on Family and Medical Leave Act (FMLA) leave approved by Arrow.  At her year-end performance review, Ms. Griffin evaluated Ms. Harper's overall performance as having achieved expectations.  Ms. Griffin noted Ms. Harper sometimes used a tone in emails or on telephone calls that came off as abrupt or unprofessional and told her she needed to work on her communication skills.

In early 2017, Ms. Griffin discussed with Ms. Harper some complaints she had received about the tone of Ms. Harper's oral and written communications with other

2

employees and outside vendors.  Ms. Griffin documented their conversation in an email sent to Ms. Harper on January 23.

In April, Ms. Harper contacted Human Resources and lodged a complaint concerning a comment made by Ms. Griffin that she found offensive—namely that a "Young Professionals" program attended by Ms. Harper was "for young people" or "millennials."  R., Vol. 1 at 203 (internal quotation marks omitted).  Human Resources promptly investigated and notified Ms. Harper that action had been taken to ensure the conduct would not be repeated.  Ms. Griffin never made any other comments or remarks related to Ms. Harper's age, and at no time did anyone at Arrow make any offensive or derogatory comments about her race, color, or gender.

Nonetheless, in May 2017, Ms. Harper filed a charge of discrimination and retaliation with the Colorado Civil Rights Division (CCRD) based on Ms. Griffin's comment about her attendance at the "Young Professionals" program.  But in September, Ms. Harper asked the CCRD to close its investigation because Arrow was looking into her concerns.  Ms. Harper later emailed the agency to confirm that she wanted to withdraw her complaint, stating her belief that Ms. Griffin did not intend any offense.  CCRD dismissed the charge in November.  Ms. Harper acknowledged that by withdrawing the charge, she could not pursue the allegations through any administrative or judicial process.

For her year-end performance review in 2017, Ms. Griffin rated Ms. Harper's overall performance as having achieved expectations and noted that she had moved to

the Price Variance Team where she was thriving.  Ms. Harper received her regular three percent raise.  At no time has Ms. Harper's compensation been reduced.

Year 2018 was uneventful other than Ms. Harper taking FMLA leave in December.  Ms. Griffin once again rated her overall job performance as having achieved expectations.

In 2019, Mr. Gustafson applied for and was selected as Team Lead in the Supplier Accounting Department.  As Team Lead, he received first-hand training, which he was then expected to share with the rest of the team, including Ms. Harper.  Ms. Harper did not apply for the Team Lead position.

On March 1, 2019, Angela Gibson, a 47-year-old African American manager in the Accounts Payable Department, received a complaint from a staff member about the tone of Ms. Harper's emails.  Ms. Gibson promptly contacted Ms. Griffin, who then met with Ms. Harper to discuss the complaint.  On March 15, Ms. Griffin issued an Employee Communication Record (ECR) to Ms. Harper concerning her unprofessional behavior.  An ECR is designed to document communication with an employee—not a disciplinary tool—and had no adverse impact on Ms. Harper's employment.  Ms. Harper disagreed with the assessment and asked Human Resources to review the ECR.  Jordan Price, a Regional Human Resources Manager, conducted a review and told Ms. Harper the feedback in the ECR was appropriate.

Still dissatisfied, on April 2, 2019, Ms. Harper called Arrow's AlertLine to file a complaint.  The next day, Regional Human Resources Manager Elise Lieberman met with Ms. Harper and documented her concerns.  Ms. Lieberman and Ms. Price

4

then interviewed the parties and other witnesses identified by Ms. Harper and prepared findings and conclusions.  Following the investigation, Ms. Lieberman and Ms. Price met with Ms. Harper and shared the results.  Ms. Harper disagreed with the findings and conclusions, and on April 12, filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC).

Ms. Decker conducted Ms. Harper's 2019 performance review, which rated her overall job performance as having achieved expectations but noted she should focus on improving her awareness of how her communications were perceived by others.  Ms. Harper admitted her performance reviews from 2016 through 2019 were consistent.

Ms. Harper has been on a medical leave of absence since April 27, 2019.  Arrow has short-term and long-term disability plans for its employees and also provides FMLA leave, personal medical leave, and personal leaves of absence.  These plans and leave programs are administered by a third-party administrator.  At no time has Arrow denied Ms. Harper the leave she requested under any of its plans or programs.

Ms. Harper exhausted twelve weeks of FMLA leave from April 27, 2019, to July 20, 2019; she received short-term disability benefits from April 27, 2019, to October 23, 2019; and she has received long-term disability benefits from October 24, 2019, through the present.

## II.  STANDARD OF REVIEW

"We review the district court's grant of summary judgment de novo." *Young v. Dillon Cos.*, 468 F.3d 1243, 1249 (10th Cir. 2006).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute is genuine if "the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party," and a fact is material when it may affect the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Among other things, "[a]n appellant's opening brief must identify appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies."  *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) (internal quotation marks omitted).  We have "repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (internal quotation marks omitted).

Consistent with this requirement, "[w]hen a pro se litigant fails to comply with [these] rule[s], we cannot fill the void by crafting arguments and performing the necessary legal research."  *Id.* at 841 (internal quotation marks omitted).  As a result, "we routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief."  *Bronson*, 500 F.3d at 1104.

6

Instead, inadequately briefed issues "will be deemed waived." *Garrett*, 425 F.3d at 841.

Ms. Harper fails to advance any adequately developed arguments on appeal. Indeed, Ms. Harper never mentions the magistrate judge's order or any of the several grounds on which he granted Arrow's motion for summary judgment, nor does she cite to the record or provide any legal authority to support her claims for relief under either Title VII or the ADEA. But even if Ms. Harper had properly challenged the order, which she failed to do, our review reveals no error.

### III.  TITLE VII

#### A.  Exhaustion of Administrative Remedies

As an affirmative defense, Arrow alleged that Ms. Harper failed to exhaust her administrative remedies as to any Title VII claims that arose before June 12, 2018. To exhaust a Title VII claim "in a deferral state like Colorado . . . a putative plaintiff [must] file a charge of discrimination with the EEOC within 300 days of the allegedly unlawful employment practice." *Edmonds-Radford v. Sw. Airlines Co.*, 17 F.4th 975, 988 (10th Cir. 2021) (internal quotation marks omitted).

Here, Ms. Harper filed her charge of discrimination on April 12, 2019. Three hundred days prior to that date is June 12, 2018. Therefore, any Title VII claims based on acts that took place before June 12, 2018, were not exhausted.

#### B.  Discrimination

To prevail on a Title VII claim, "a plaintiff must show that [her] employer intentionally discriminated against [her] for a reason prohibited by the statute,"

which includes race, color, or gender. *Jaramillo v. Colo. Jud. Dep't*, 427 F.3d 1303, 1306 (10th Cir. 2005). "When a plaintiff relies on circumstantial evidence to prove employment discrimination, we apply the three-step burden-shifting framework set forth in *McDonnell Douglas* [*Corp. v. Green*, 411 U.S. 792 (1973),] and its progeny." *Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005). "If the employee makes a prima facie showing, the burden shifts to the defendant employer to state a legitimate, nondiscriminatory reason for its adverse employment action." *Id.* (internal quotation marks omitted). "If the employer meets this burden, then summary judgment is warranted unless the employee can show there is a genuine issue of material fact as to whether the proffered reasons are pretextual." *Id.*

To demonstrate a prima facie case of discrimination, the plaintiff must show "(1) the victim belongs to a protected class; (2) the victim suffered an adverse employment action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination." *EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007). The magistrate judge found, and we agree, that Ms. Harper failed to establish a prima facie case because, among other things, she did not suffer an adverse employment action.

"An adverse employment action includes acts that constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Dick v. Phone Directories Co.*, 397 F.3d 1256, 1268 (10th Cir. 2005) (brackets and internal quotation marks omitted). Although "we liberally interpret the

8

second prong of the prima facie case and take a case-by-case approach, . . . we will not consider a mere inconvenience or an alteration of job responsibilities to be an adverse employment action." *Id.* (internal quotation marks omitted).

Ms. Harper maintains she suffered an adverse employment action when Mr. Gustafson, the Team Lead, received first-hand training that allowed him to "create his own notes," while she had no such opportunity and instead was forced to rely on "his notes to use for [her] training." Aplt. Opening Br. at 2. But Ms. Harper never explains how this alleged disparity resulted in any significant change in her employment status, compensation, or benefits. Also without merit is Ms. Harper's claim that she was demoted when she returned from FMLA leave in 2016. We agree with the magistrate judge that "the alleged demotion, even if assumed true, occurred in 2016," and "any action that happened prior to June 12, 2018 is time-barred." R., Vol. 1 at 213. Summary judgment was therefore proper.

## C. Harassment

To avoid summary judgment on a Title VII harassment claim, Ms. Harper "must present evidence that creates a genuine dispute of material fact as to whether the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [her] employment." *Lounds v. Lincare*, 812 F.3d 1208, 1222 (10th Cir. 2015) (brackets and internal quotation marks omitted). Specifically, to prove a prima facie case Ms. Harper must show:

9

> (1) she is a member of a protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on [race, color, or gender]; and (4) [due to the harassment's severity or pervasiveness], the harassment altered a term, condition, or privilege of the plaintiff's employment and created an abusive working environment.

*Id.* (brackets and internal quotation marks omitted).  We agree with the magistrate judge that Ms. Harper failed to establish a prima facie case because, among other things, she failed to establish harassment based on race, color, or gender.

The *only* arguably derogatory or offensive comment made by anyone at Arrow was in 2017, when Ms. Griffin said she thought the "Young Professionals" program attended by Ms. Harper was intended for young people. This comment had nothing to do with race, color, or gender.  In any event, the comment was made before June 12, 2018, and is time-barred.  Therefore, summary judgment was proper.

## D.  Retaliation

The *McDonnell Douglas* burden-shifting framework also applies to Title VII retaliation claims.  *See Lounds*, 812 F.3d at 1233-34 ("Once the plaintiff successfully asserts a prima facie retaliation case, the burden shifts to the defendant (i.e., the employer) to come forward with a legitimate, non-retaliatory rationale for the adverse employment action.  If the defendant does so, the plaintiff must show that the defendant's proffered rationale is pretextual." (ellipsis and internal quotation marks omitted)).

To establish a prima facie case, the plaintiff must prove "(1) that she engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection

existed between the protected activity and the materially adverse action." *Id.*
(brackets and internal quotation marks omitted). A "materially adverse" action is
action that would "dissuade[] a reasonable worker" from engaging in protected
activity." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)
(internal quotation marks omitted

Arrow conceded that Ms. Harper engaged in protected activity when she filed
a complaint with the EEOC on April 12, 2019; however, it disagreed that she
demonstrated a materially adverse employment action because nothing arguably
adverse happened to her after she filed her complaint. Recall that Ms. Harper began
medical leave on April 27, 2019—two weeks after filing her complaint with the
EEOC—and received a favorable performance review for 2019. Therefore, summary
judgment was proper.

## IV. ADEA

### A. Exhaustion of Administrative Remedies

As explained previously, Arrow alleged as an affirmative defense that
Ms. Harper failed to exhaust her administrative remedies as to any claims that arose
before June 12, 2018. To exhaust a claim under the ADEA in a deferral state like
Colorado, the putative plaintiff must file a charge of discrimination with either the
EEOC or an authorized state or local agency within 300 days of the allegedly
unlawful employment practice. *See* 29 U.S.C. § 626(d)(1)(B); *see also Thiessen v.
Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1109 n.10 (10th Cir. 2001).

11

Ms. Harper filed her charge of discrimination on April 12, 2019.  Three hundred days prior to that date is June 12, 2018.  Therefore, any ADEA claims based on acts that took place before June 12, 2018, were not exhausted.

## B.  Discrimination

Under the ADEA, it is "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  The *McDonnell Douglas* three-step framework applies to claims of discrimination under the ADEA based on circumstantial evidence.  *See Jones v. Okla. City Pub. Schs.*, 617 F.3d 1273, 1278 (10th Cir. 2010).

To prove a prima facie case at step one, the plaintiff must show, among other things, that:  (1) she belongs to the class protected by the ADEA; (2) she suffered an adverse employment action; and (3) she was treated less favorably than others not in the protected class.  *See id.* at 1279.  Ms. Harper's age-discrimination claim fails for the same reason her Title VII discrimination claim fails—the lack of an adverse employment action.  Moreover, the only age-related comment was made in 2017, and is thus time-barred.  Summary judgment was therefore proper.

## C.  Harassment

Ms. Harper's apparent claim is that she was subjected to a hostile work environment based on her age.  "For [an ADEA] hostile environment claim to survive a summary judgment motion, a plaintiff must show that a rational jury could find that

12

the workplace was permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *MacKenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1280 (10th Cir. 2005) (brackets and internal quotation marks omitted), *abrogated in part on other grounds by Lincoln*, 900 F.3d at 1185.

The *only* arguably derogatory or offensive comment remotely related to Ms. Harper's age was made by Ms. Griffin in 2017, when she commented on Ms. Harper's attendance at the "Young Professionals" program. This single comment did not create a hostile work environment. Moreover, the comment was made before June 12, 2018, and is time-barred. Therefore, summary judgment was proper.

## D. Retaliation

The *McDonnell Douglas* burden-shifting framework applies to Ms. Harper's ADEA retaliation claim. *See Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1201 (10th Cir. 2008). "A prima facie case of [ADEA] retaliation requires the plaintiff to show that (1) he or she engaged in protected opposition to discrimination, (2) a reasonable employee would have considered the challenged employment action materially adverse, and (3) a causal connection existed between the protected activity and the materially adverse action." *Id.*

As explained previously, Arrow conceded that Ms. Harper engaged in protected activity when she filed a complaint with the EEOC on April 12, 2019;

however, it disagreed that she demonstrated a materially adverse employment action. We agree with the magistrate judge that nothing even arguably adverse happened to Ms. Harper after she filed her complaint.  Therefore, summary judgment was proper.

## V.  CONCLUSION

The judgment is affirmed.

We deny Ms. Harper's motions to supplement the record filed on August 4, 2021; August 13, 2021; October 4, 2021; and October 15, 2021.  We grant Ms. Harper's motion to proceed on appeal without prepayment of costs or fees.

Entered for the Court

Gregory A. Phillips
Circuit Judge