**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

MARTHA LOU BRAUN,

      Plaintiff-Appellant,

v.

ST. PIUS X PARISH, an ecclesiastical
organization; ST. PIUS X, a not for profit
organization, d/b/a St. Pius School;
MATTHEW VEREECKE, in his official
capacity,

      Defendants-Appellees.

No. 11-5157
(D.C. No. 4:09-CV-00779-GKF-TLW)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **O'BRIEN**, and **MATHESON**, Circuit Judges.

Martha Lou Braun appeals from the entry of summary judgment in favor of

defendants on her claim of age discrimination.[1]  But the defendants offered

---

[*]      After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1]      Our jurisdiction derives from 28 U.S.C. § 1291,

compelling evidence of a nondiscriminatory reason for her termination, which she failed to discredit by evidence establishing pretext. We affirm.

## I. BACKGROUND

Braun was a fifth grade teacher at St. Pius X School (St. Pius). St. Pius is a Catholic school operated by defendant St. Pius X, a Catholic church within defendant St. Pius X Parish of the Roman Catholic Diocese of Tulsa, Oklahoma. Braun is Episcopalian, and she had taught at St. Pius since 1988 under a series of one-year contracts.[2]

Defendant Matthew Vereecke was the principal of St. Pius from approximately July 1, 2007, until June 30, 2010. He was 23 years old when hired. In April of each year, the principal of St. Pius makes a recommendation to the pastor about the renewal of teacher contracts. The pastor then approves or rejects the recommendation. In April 2008, Vereecke recommended to the pastor, Father Michael Knipe, that Braun's contract not be renewed. Knipe approved the recommendation. On April 25, Vereecke informed Braun her contract would not be renewed. According to Braun's testimony, Vereecke told her the school was "going in a new direction" and it was "not about [her.]" Aplt. App., Vol. I at 62. Braun was 64 years old at the time. Her replacement for the 2008-09 school year, Katie Roberson, was in her twenties, Catholic, and a member of the Parish. Roberson had

---

[2]    Braun's 2007-08 contract reads "[t]his contract shall be renewed only upon the written agreement of the parties." Aplt. App., Vol. I at 375.

been teaching middle-school grades (sixth through eighth) at St. Pius. Additionally, Braun was not interviewed or hired for an open position teaching middle-school science at St. Pius for the 2008-09 school year. The school hired Katie Blum for that position. Like Roberson, Blum was in her twenties, Catholic, and a parishioner.

After filing a charge with the Equal Employment Opportunity Commission (EEOC) and receiving a right-to-sue letter, Braun brought this action. She claimed the nonrenewal of her contract and the failure to interview or hire her for the middle-school science-teacher position violated the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634 (ADEA). She also claimed age discrimination in violation of Oklahoma public policy, commonly known as a *Burk* tort claim,[3] *see Burk v. K-Mart Corp.*, 770 P.2d 24 (Okla. 1989), and a claim of religious discrimination. The latter claims are not before us.[4]

The parties filed cross motions for summary judgment. Because Braun lacked direct evidence of age discrimination, the district court analyzed the ADEA claim under the familiar burden-shifting framework outlined in *McDonnell Douglas Corp.*

---

[3]     In *Burk*, the Oklahoma Supreme Court recognized a tort claim for at-will employees terminated in violation of public policy. 770 P.2d at 29.

[4]     Braun's opening brief contains only one reference to her *Burk* claim, *see* Aplt. Opening Br. at 4, and no argument as to the impropriety of summary judgment with respect to it. She has forfeited our consideration of the *Burk* claim. *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007). She also brought a claim of religious discrimination. The district court decided religious institutions, such as these, are permitted to consider religion in employment decisions. *See* Aplt. Opening Br. at 4, n.1. Braun has not appealed from that ruling.

*v. Green*, 411 U.S. 792, 802-04 (1973). It decided Braun had established a prima facie case of discrimination, but defendants had proffered a legitimate, nondiscriminatory reason for not renewing her contract, namely, parental complaints.

Turning to whether Braun could show that reason was pretextual, the court first concluded Knipe, not Vereecke, was the sole decision maker. Because Knipe had approved Braun's two prior contract renewals, the court afforded defendants a strong inference against pretext under the "same actor" theory. *See Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1183 (10th Cir. 2006) (permitting such an inference where an employee is "hired and fired by the same person within a relatively short time span" (internal quotation mark omitted)). It then concluded Braun had presented no evidence of age discrimination by Knipe or established Knipe to be the "cat's paw" for Vereecke's allegedly discriminatory acts sufficient to establish a subordinate-bias claim. *See EEOC v. BCI Coca-Cola Bottling Co.*, 450 F.3d 476, 484 (10th Cir. 2006) (describing the "cat's paw" theory of discrimination as "a situation in which a biased subordinate, who lacks decisionmaking power, uses the formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory employment action").

In the alternative, the court determined Braun had not shown pretext even if Knipe was not the sole decision maker. It rejected Braun's argument that Vereecke's handling of parental complaints about her deviated from both the school's written procedures and his own unwritten policy for handling parental complaints. Finally, it

determined Braun's claim of differential treatment with respect to three younger teachers failed because those teachers were not valid comparators. Accordingly, it entered summary judgment for the defendants and denied Braun's motion for summary judgment. This appeal followed.

## II. DISCUSSION

"We review a district court's grant of summary judgment de novo, applying the same legal standard used by the lower court." *Jones v. Okla. City Pub. Sch.*, 617 F.3d 1273, 1277 (10th Cir. 2010). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "We examine the factual record and reasonable inferences therefrom in the light most favorable to [Braun]." *Jones*, 617 F.3d at 1277 (internal quotation marks omitted).

Our review is limited to Braun's ADEA claim. *See supra* at 3 n.4. The ADEA prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). "[T]o succeed on a claim of age discrimination, a plaintiff must prove by a preponderance of the evidence that her employer would not have taken the challenged action but for the plaintiff's age." *Jones*, 617 F.3d at 1277.

The district court was correct. Braun failed to establish pretext. That is true whether or not we apply the "same actor" inference and/or credit her "cat's paw" argument.

In arguing pretext Braun claims she was "treated differently from other similarly situated employees who violated work rules of comparable seriousness." *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997). She has the burden to show other employees were similarly situated. *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1121 n.4 (10th Cir. 2007). In arguing she met her burden, Braun points to Vereecke's treatment of Roberson and Blum, both of whom were in their twenties at the time, and a third teacher, Chrissy Donatucci, who was 39. All three were the subjects of parental complaints but all three were allowed to continue teaching. However, as the district court pointed out, Vereecke received two parental complaints about Braun in April 2008 that "were unique in scope and consequence." *Braun v. St. Pius X Parish*, 827 F. Supp. 2d 1312, 1325 (N.D. Okla. 2011). One parent told Vereecke her oldest child had a negative experience with Braun sufficient for her to allow one of her younger children to decide whether to transfer to another school for fifth grade in the 2007-08 school year. That child chose to transfer. The parents of another child, who had also been Braun's pupil, told Vereecke they were considering moving their second child to another school for the 2008-09 school year. They were motivated by a desire to avoid having Braun as his fifth-grade teacher.

Significantly, none of the three offered comparators received such serious complaints and, *a fortiori*, were not similarly situated.

The only written documentation of these complaints are affidavits prepared in support of defendants' summary judgment motion. Braun complains about them, implying the complaints were not actually made as claimed, or at least when claimed. That is because, according to Vereecke's testimony, any meeting he had with parents would be listed on his planning calendar, but his calendar failed to mention either of these complaining parents. However, evidence of pretext "defeats summary judgment only if it could reasonably lead the trier of fact to infer a discriminatory motive." *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1168 (10th Cir. 2007). In essence, we are asked to assume the defendants procured a perjured nonparty affidavit[5] and Vereecke's testimony is unworthy of belief. But Braun has not pointed to any policy, written or otherwise, requiring contemporaneous written documentation of parental complaints. Nor can we view Vereecke's mere failure to record a meeting on his calendar as giving rise to a reasonable inference of discrimination; there is no evidence from which a reasonable juror could conclude that these parents did not inform Vereecke of their concerns about Braun. She did not provide deposition testimony from the complaining parents, which might have put flesh on her bare-bones accusations.

---

[5] Our review of the record reveals an affidavit from the parent who actually took her child out of St. Pius but no affidavit from the parents who threatened to do so.

Braun's claim of differential treatment by Vereecke lacks record support. He recommended nonrenewal of Roberson's contract for the 2008-09 school year because she was not certified to teach the middle-school literature class she had been teaching. Knipe vetoed that recommendation; he and Vereecke then decided to move Roberson into Braun's vacated fifth-grade slot for that school year, a position for which she was certified. Vereecke also recommended nonrenewal of Donatucci's contract, but after discussing it with Knipe, they decided to renew her contract. Blum did not start teaching at St. Pius until the 2008-09 school year. According to Vereecke's testimony, he wanted to immediately terminate her employment following an incident of improper text messaging and telephone contact with male students in September 2008. Knipe decided she should be disciplined instead. Ultimately, eight months later, her contract was renewed for the following year. Because Vereecke recommended nonrenewal or immediate termination of each of the putative comparators, Braun has not shown disparate age treatment at Vereecke's hands. Importantly, Braun has not suggested Knipe's decision to overrule Vereecke's recommendations as to Roberson, Donatucci, and Blum shows a bias toward younger teachers. To the contrary, she "has always maintained that Vereecke was the decision-maker with respect to the non-renewal of Ms. Braun's teaching contract based upon her age."[6] Aplt. Reply Br. at 5.

---

[6] Roberson, Donatucci, and Blum were all Catholic and members of the St. Pius X Parish, but Braun was Episcopalian and not a parishioner. Knipe's testimony was

(continued)

Braun claims pretext can be inferred from Vereecke's inconsistent reasons for not renewing her contract. When he told Braun her contract would not be renewed, he allegedly said it had nothing to do with her but was because the school was going in a different direction. But after Braun filed her EEOC discrimination charge, Vereecke said the reason for non-renewal was due to parental complaints—the two discussed above and three others. One of the other parental complaints related to Braun having asked a parent if her child had been tested for a developmental disorder. Another parent complained of Braun's failure to comply with a plan developed to assist his son with difficulties in spelling and vocabulary. According to that complaint, on one occasion she did not give his son a list of vocabulary words ahead of the weekly test. The third complaint was about Braun's alleged failure to sufficiently require students to use a daily planner and her unresponsiveness to the parents' attempts to communicate their dissatisfaction to her.

The claimed inconsistencies in Vereecke's explanations are not of the sort giving rise to an inference of discrimination. "A plaintiff shows pretext by demonstrating such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence

clear: whether a teacher was Catholic and a parishioner was a factor in his decision-making. Those ecumenical concerns further call into question whether those individuals are valid age discrimination comparators at least with respect to his decision-making (which was final and is not directly challenged).

infer that the employer did not act for the asserted non-discriminatory reasons." *Swackhammer*, 493 F.3d at 1167 (internal quotation marks omitted). But a change in an employer's asserted reason for an employment action does not give rise to an inference of discrimination where the new reason is supported by the evidence. *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1311 (10th Cir. 2005). Here, Vereecke's claimed basis for his termination recommendation—parental complaints—has record support. Moreover, Vereecke testified to not having given Braun a reason when he said her contract would not be renewed. That is because she was "very angry." Aplt. App., Vol. I at 130. At most, Braun has "'created only a weak issue of fact as to whether the employer's reason was untrue and there [is] abundant and uncontroverted independent evidence that no discrimination had occurred.'" *Swackhammer*, 493 F.3d at 1168 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000)). In such a situation, it is not "permissible for the factfinder to infer discrimination from evidence that the employer's explanation is unworthy of belief." *Id.*

Finally, Braun points to Vereecke's failure to follow his own unwritten policy in Braun's case, namely, informing teachers of parental complaints and giving them a chance to improve.[7] Defendants claim Vereecke discussed or Braun had an

---

[7] On appeal, Braun summarily claims Vereecke did not follow the school's written grievance procedure, but she has not sufficiently developed an argument on the point. Accordingly, she has forfeited our consideration of the issue. *See Bronson*, 500 F.3d at 1104.

awareness of the three complaints made by parents of children in Braun's 2007-08 class, and Braun had at least an implicit chance to improve. We need not sort out this dispute because, even assuming Vereecke failed to follow his own policy, that is insufficient, in these circumstances, for a reasonable juror to infer age discrimination was the but-for motive behind his recommendation not to renew Braun's contract.[8] Instead, despite his alleged mishandling of these parental complaints, Vereecke's consideration of them in making his recommendation falls into a category of employment decisions this court will not second-guess "even if it seems in hindsight that the action taken constituted poor business judgment." *Riggs*, 497 F.3d at 1119 (internal quotation mark omitted). "[O]ur role is to prevent intentional discriminatory hiring practices, not to act as a 'super personnel department.'" *Id.* (internal quotation mark omitted). The evidence of Vereecke's failure to follow his own policy is insufficient for a reasonable factfinder to conclude, based on a preponderance of the evidence, that age was the "but for" cause of the decision to not renew her contract. *See Jones*, 617 F.3d at 1277 (explaining that "to succeed on a claim of age discrimination, a plaintiff must prove by a preponderance of the

---

[8] Contrary to Braun's argument, whether Vereecke treated the other teachers differently with regard to parental complaints (by informing them of the complaints and giving them a chance to improve) simply cannot, in the context of this case, rise to a reasonable inference of age discrimination. That factor, even in combination with the other alleged similarities among them and Braun, is insufficient to meet her burden of showing the comparators were similarly situated.

evidence that her employer would not have taken the challenged action but for the plaintiff's age").

## III.    CONCLUSION

The judgment of the district court is affirmed.  The parties' joint motion to seal the appellate briefs, provisionally granted by the Clerk's office, will be vacated unless, within twenty days, the parties specifically identify those parts of the briefs they want sealed and explain why sealing is appropriate in light of the published district court opinion.

Entered for the Court

Terrence L. O'Brien
Circuit Judge